**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Randolph W. Fort,

Plaintiff,

v.

St. Paul Fire and Marine Insurance Company,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-2344 ADM/AJB

---

Matthew P. Lewis, Esq., and Terrence J. Fleming, Esq., Lindquist & Vennum, P.L.L.P., Minneapolis, MN, appeared for and on behalf of Plaintiff.

Kathryn A. Mrkonich-Wilson, Esq., and Jeremy D. Sosna, Esq., Littler Mendelson, P.C., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On April 2, 2002, the Motion to Dismiss [Doc. No. 4] of Defendant St. Paul Fire and Marine Insurance Company ("Defendant" or "St. Paul"), and the Motion to Remand [Doc. No. 11] of Plaintiff Randolph W. Fort ("Plaintiff" or "Employee"), were argued before the undersigned United States District Judge. For the reasons set forth below, the Motion to Dismiss is granted.

## II. BACKGROUND

In November, 1999, Plaintiff's 23-year employment with Defendant was terminated as a result of a company-wide reduction in force. Defendant had an existing severance plan for certain employees and affiliates, The St. Paul Companies, Inc. Severance Plan ("Severance Plan"). Plaintiff, however, had executed a Confidential Separation Agreement ("Separation

MAY 2 8 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 2 8 2002
DEPUTY CLERK

Agreement") with Defendant on November 8, 1999. Plaintiff's Separation Agreement provided that "[t]he severance benefits and payments to be provided under [the Separation Agreement] are in place of, and not in addition to, payments otherwise provided under the Plan or any other St. Paul severance plan." Sosna Aff. Ex. A (Separation Agreement pt. II(A)). The Separation Agreement further stated that it "is a complete agreement and states fully all agreements . . . as between Employee and St. Paul as to the separation of Employee from employment by St. Paul. This [Separation] Agreement supersedes any prior agreements, whether oral or written, between Employee and St. Paul." Id. (Separation Agreement pt. V(H)).

In accordance with the Separation Agreement, Plaintiff was to receive 46 weeks of his base salary in bi-weekly installments, an incentive payment, and continuation of welfare benefits. Id. (Separation Agreement pt. II(A)-(C)). As an Addendum to the Separation Agreement ("Addendum"), Relocation Benefits for Plaintiff were also agreed to:

> If Employee was relocated at St. Paul's request within 24 months prior to the Separation Date, St. Paul will provide Employee with relocation benefits of equivalent type and cost to the benefits Employee received in connection with his/her last relocation . . . provided that the [E]mployee relocates . . . within three (3) months of the Separation Date.

Id. (Separation Agreement pt. II(G)). On January 13, 2000, Plaintiff moved from Baltimore, Maryland, to Northville, Michigan. The parties agree that Plaintiff had been relocated at Defendant's request within the previous 24 months, and that the relocation to Michigan occurred within three months after Plaintiff's Separation Date, qualifying Plaintiff for the Relocation Benefits outlined in the Addendum. The parties dispute the extent of the benefits.

In June, 1998, Plaintiff had relocated from St. Paul, Minnesota, to Baltimore, Maryland. As compensation for this move, Defendant paid Plaintiff for his out-of-pocket relocation

expenses, as well as a lump sum payment of $40,000 on June 11, 1998. The earnings section of the $40,000 check stub noted the payment was for relocation. Compl. Ex. A. After Plaintiff's January, 2000, relocation to Michigan, Defendant reimbursed Plaintiff for his incurred moving expenses. Plaintiff contends that he is also entitled to a $40,000 relocation payment as part of the "relocation benefits of equivalent type and cost" to the benefits he received in connection with his prior relocation. To that end, Plaintiff's Complaint asserts claims for breach of contract (Count I) and promissory estoppel and quantum meruit (Count II). Compl. ¶¶ 14-21.

Defendant argues that its Severance Plan is an "employee benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(1) & (3), and that Plaintiff's claims based on the Separation Agreement relate to the Severance Plan. Thus, Defendant argues that Plaintiff's state law claims are preempted by ERISA because they "relate to [an] employee benefit plan" under 29 U.S.C. § 1144(a). See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 43-45 (1987) (holding that ERISA preempts state common law contract actions relating to employee benefit plans). Plaintiff claims the Separation Agreement is not related to the Severance Plan, and is not itself an employee benefit plan, and thus his claims are not preempted by ERISA.

## III. DISCUSSION

### A. Rule 12(b)(6) Standard

Claims that are preempted by ERISA are properly dismissed on motions brought under Fed. R. Civ. P. 12(b)(6). See Bomis v. Metropolitan Life Ins. Co., 970 F.Supp. 584 (E.D. Mich. 1997). Rule 12(b)(6) provides that a party may move to dismiss claims for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the pleadings are

construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the non-moving party. Ossman, 825 F. Supp. at 880.

A complaint should be dismissed "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citations omitted); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey, 44 F.3d at 671.

**B. ERISA Preemption**

The central issue in this case is whether or not the Separation Agreement (with its Addendum) was premised on, or constituted, an employee benefit plan. If so, Plaintiff's action comes within the scope of ERISA and is preempted by § 1144(a), and hence his action was removable to federal court. See Crews v. General American Life Ins. Co., 274 F.3d 502, 505 (8th Cir. 2001). If not, then removal was improper. See id.

Plaintiff does not dispute that the Severance Plan qualifies as an employee welfare benefit plan under ERISA. See Massachusetts v. Morash, 490 U.S. 107, 116 (1989) (holding that plans to pay employees severance benefits upon termination of employment are employee welfare benefit plans within the meaning of ERISA). Plaintiff argues what is in controversy is the Separation Agreement which is a stand-alone contract that does not relate to the Severance Plan.

When state law claims relate to ERISA plans, those claims are transmuted into ERISA claims. Minnesota Chapter of Associated Builders and Contractors, Inc., v. Minnesota Dept. of Public Safety, 267 F.3d 807, 811 (8th Cir. 2001). A law "relates to" an ERISA plan if it has a "connection with" or "reference to" the plan. California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc., 519 U.S. 316, 324 (1997). The deliberately expansive ERISA preemption clause is conspicuous for its breadth, and under its "broad, common-sense meaning," a state law may relate to a benefit plan even if the law is not specifically designed to affect such plans, or the effect is only indirect. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138-39 (1990). Here, the relevant question is whether or not Plaintiff's breach of contract and promissory estoppel/quantum meruit claims deriving from the Separation Agreement relate to the Severance Plan.

If the Separation Agreement is "simply an attempt to amend the existing plan, then it follows that [it was] based on that plan . . . and would be preempted by § 1144(a)." Id.; Anderson v. John Morrell & Co., 830 F.2d 872, 875 (8th Cir. 1987) (holding that ERISA preempts actions to enforce or clarify rights under an existing plan, as well as claims seeking to add additional benefits to an existing plan). However, if the Separation Agreement was not intended to constitute a change in Defendant's existing Plan, but rather was a distinct, free-standing offer of benefits, then it follows that it was not premised on the existing Plan and therefore does not "relate to" it. Crews, 274 F.3d at 505.

Defendant argues that "disposition of [Plaintiff's] claims require an interpretation of the Severance Plan and, therefore, necessarily 'relates to' the terms of the Severance Plan." Def. Mem. in Supp. at 11. Defendant also asserts that Plaintiff's alleged right to a $40,000 relocation

payment is "based directly on the Severance Plan." Id. Finally, Defendant avers that the Separation Agreement "simply provides those benefits to which [Plaintiff] is entitled under the Severance Plan." Def. Reply Mem. at 11.

The position argued by Defendant is belied by the express provisions of the Separation Agreement. The Separation Agreement provided that "[t]he severance benefits and payments to be provided under [the Separation Agreement] are in place of, and not in addition to, payments otherwise provided under the Plan or any other St. Paul severance plan." Sosna Aff. Ex. A (Separation Agreement pt. II(A)). This provision indicates that the Separation Agreement was not an attempt to amend or change the existing Severance Plan, but rather to replace it. The Separation Agreement further stated that it "is a complete agreement and states fully all agreements . . . as between Employee and St. Paul as to the separation of Employee from employment by St. Paul. This [Separation] Agreement supersedes any prior agreements, whether oral or written, between Employee and St. Paul." Id. (Separation Agreement pt. V(H)). Thus, the Separation Agreement is by its own terms a distinct contractual arrangement. The Separation Agreement cannot be construed to be premised on the Severance Plan, nor to require an interpretation of the Severance Plan. Therefore, the Separation Agreement is not "related to" the Severance Plan.

The next question is whether or not the Separation Agreement and its Addendum themselves constitute an ERISA plan. Plaintiff argues that the $40,000 payment allegedly owed by Defendant in accordance with the Addendum does not qualify as an ERISA plan. However, it is not the Addendum alone that is the proper subject of inquiry, but rather the Separation Agreement of which the Addendum is a part. The Addendum is not its own contract, because it

was specifically incorporated into the Separation Agreement. The Separation Agreement pt. II is labeled "Consideration" and contains parts A through F. Sosna Aff. The Addendum was labeled "II. Consideration (Addendum)," and contains part G. Id. The formatting of the Separation Agreement and the Addendum establish them as parts of a single contract.

"ERISA was intended to provide for the federal regulation of *plans*, not merely *benefits*." Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 934 (8th Cir. 1999). An employer's decision to extend severance benefits does not, in and of itself, constitute the establishment of an ERISA plan. See Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994). Severance benefits are characterized as a plan when they require an "ongoing administrative program" to meet the employer's obligation. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987); Kulinski, 21 F.3d at 257. When determining whether payments require an ongoing administrative scheme, four factors are relevant: (1) whether the payments are one-time lump sum payments or continuous payments, (2) whether the employer undertook any long-term obligation with respect to the payments, (3) whether the severance payments come due upon the occurrence of a single, unique event or any time that the employer terminates employees, and (4) whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees. Crews, 274 F.3d at 506.

**i. Not a Single, Lump Sum Payment**

The reimbursement for Plaintiff's out-of-pocket moving expenses is easily characterized as a one-time lump sum payment under the Separation Agreement, and the $40,000 relocation payment made in relation to Plaintiff's move to Baltimore was paid in a lump-sum payment. However, other elements of Plaintiffs severance benefits under the Separation Agreement are not

lump-sum payments. At Plaintiff's election, the "Basic Severance Payment" of two weeks salary for each year of employment was made in 23 bi-weekly installments. Sosna Aff. Ex. A (Separation Agreement pt. II(A)). Defendant provided Plaintiff with continuation of its employee welfare benefits during the period when the installment payments were being made. Id. (Separation Agreement pt. II(B)). Plaintiff also received an incentive payment equal to his 1999 target incentive opportunity, prorated for the number of months actually worked in 1999. Id. (Separation Agreement pt. II(C)). The relocation benefits were contingent on Plaintiff having moved within 24 months prior to his separation date, and again within three months after the separation date. Id. (Separation Agreement pt. II(G)). Thus, the severance benefits as a whole were paid over an extended period of time, and required an administrative analysis of qualifications prior to payment.

**ii. Long-Term Obligations**

The payment of Plaintiff's severance benefits over the span of 46 weeks required St. Paul to undertake the long-term obligation of making its payments, and providing medical and/or dental coverage and life insurance coverage throughout that time period. In the event of Plaintiff becoming re-employed by Defendant, the unpaid bi-weekly installment payments would be terminated. Id. (Separation Agreement pt. II(D)). This required Defendant to monitor Plaintiff's employment status throughout the time period of entitlement to installment payments. The Separation Agreement also included a confidentiality clause, and two non-solicitation clauses prohibiting Plaintiff from contacting St. Paul's employees or customers for a twelve month period following the end of his employment. Id. (Separation Agreement pt. III(C)-(F)). Defendant had a one-year period of oversight to ensure that Plaintiff complied with the

confidentiality and non-solicitation obligations. These elements show that long-term obligations were undertaken by Defendant.

**iii. Payment Not Due Upon Single Unique Event**

Under the Separation Agreement, no single event triggers a one-time payment of benefits to Plaintiff. Rather, before Plaintiff became entitled to relocation benefits under the Separation Agreement, he must have first been terminated under the appropriate circumstances to be eligible for severance benefits, and then have relocated in accordance with the requirements of the Addendum. This series of occurrences does not constitute a single unique event.

**iv. Case-by-Case Review**

Where severance payments are not "virtually automatic," or absent proof that the standards set out for determining benefits were in practice disregarded, decisions regarding eligibility for severance benefits and the amount of such benefits are made with the exercise of judgment. Emmenegger, 197 F.3d at 935. Here, severance benefits were not awarded mechanically upon termination, but the decision to pay benefits was made on an individual basis after exercising discretion described in the Separation Agreement. The Separation Agreement requires Defendant to determine whether or not Plaintiff is entitled to severance benefits. "[I]f Employee engages in insubordinate conduct, is disruptive in the workplace, . . . or produces a . . . consistently inferior work product," Defendant retained the right to terminate Plaintiff, disqualifying him from the benefits, depending on the seriousness of the performance issues. Id. (Separation Agreement pt. I(D)(1)). Also, Plaintiff was eligible for benefits after being terminated as part of a reduction in force, but would not have been eligible upon voluntary resignation or abandonment of work duties. Id. (Separation Agreement pt. I(D)(3)). These

elements of the Separation Agreement required a case-by-case review by Defendant.

Each of the above four factors weigh in favor of regarding the Separation Agreement as an employee benefit plan under 29 U.S.C. §§ 1002(1) & (3). Therefore, Plaintiff's breach of contract and promissory estoppel/quantum meruit claims based on the Addendum to the Separation Agreement relate to an employee benefit plan under 29 U.S.C. § 1144(a). As such, this action was properly removable to federal court, and Plaintiff's Motion to Remand is denied. Plaintiff's state law claims are preempted by ERISA, and Defendant's Motion to Dismiss is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Doc. No. 4] is **GRANTED**, and
2. Plaintiff's Motion to Remand [Doc. No. 11] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: May 28, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

- ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

## *Featured Speakers Include:*

District of Minnesota

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

United States Bankruptcy Court
District of Minnesota

Judge Robert J. Kressel

Application Pending for 7.5 CLE Credits including
2 Ethics and 1 Bias Credit

**The Minnesota Chapter of the Federal Bar Association**
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

June 19, 2002
8:00 am—5:15 pm

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office)*;** **Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## Seminar Registration

☐ Member $195.00

☐ Non-Member $225.00

Name

Firm/Employer

Address

Phone

E-Mail

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA (612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building